■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. JOSE SANCHEZ and RUBEN RAMOS, Appellants.— Two judgments of the Supreme Court, Kings County, both rendered September 11, 1967, each convicting a respective defendant of burglary in the third degree and grand larceny in the second degree, upon a jury verdict, and imposing sentence, affirmed. In our opinion, no error was committed by the trial court in refusing to permit new counsel to represent defendants in the proceedings prior to sentencing. With respect to the proceedings at the sentencing, defendants have raised no question in their briefs concerning the allocution and we see no reason to interpose any objection on their behalf. It is clear on this record that counsel at the sentencing was about to repeat the same claims which he had theretofore presented to the

court by a written motion, i.e., that the right to counsel had not been observed in the proceedings prior to sentencing. No prejudice therefore resulted to defendants, since that motion had been previously denied, and in our opinion correctly denied. Moveover, the guilt of defendants was so well established at the trial that we do not believe we should reach out to consider claims not raised by them on this appeal. Beldock, P. J., Brennan and Hopkins, JJ., concur; Christ and Benjamin, JJ., concur in the affirmance of the judgment which convicted defendant Sanchez, but dissent in defendant Ramos' case and vote to reverse the judgment convicting him and to remit his case for resentence, with the following memorandum: Defendant Ramos is inarticulate in English. Before he was indicted, Max Schulman was assigned to represent him as counsel in the Criminal Court of the City of New York. When Ramos was thereafter arraigned in the Supreme Court to plead to the indictment, Schulman was not present and the court assigned John P. Curley, of the Legal Aid Society, to represent him and codefendant Sanchez. When the case was called for trial several months later, another Legal Aid attorney, Caesar Cirigliano, appeared for both defendants and informed the court that the defendants no longer wanted him to represent them. The court directed him to remain in the case; Cirigliano advised defendants that they could either proceed *pro se* or else have him represent them; defendants then decided to proceed with Cirigliano representing them. Cirigliano tried the case and the jury convicted both defendants of third degree burglary and second degree grand larceny. The next month, Schulman (the attorney originally assigned to represent Ramos in the Criminal Court) moved to vacate Ramos's conviction on the ground that he had been denied his right to counsel. Schulman alleged that he had been assigned and had appeared for Ramos in the Criminal Court; that he thereafter filed his notice of appearance in the Supreme Court and served a copy on the District Attorney; that on February 8, 1967 he was reassigned to the case in the Supreme Court by Judge MALBIN; that he received a notice of arraignment but not a notice of trial; that on May 17, 1967 he read in the *Law Journal* that the case was on the Reserve Calendar, so he went to court and spoke to an Assistant District Attorney who told him that she would get in touch with him the following week about a possible disposition of the case; that she did not get in touch with him; that on March 25 he learned that the case was on the Ready Calendar, went to court and was then told that the case had been tried several days earlier, with a Legal Aid attorney representing defendants; that he was never discharged as attorney for Ramos and there was never a formal application made to susbstitute a Legal Aid attorney in his place. Despite the absence of any opposing affidavits, the motion to vacate the conviction was denied. On July 31, when defendants appeared for sentence, Schulman appeared for Ramos and a Legal Aid attorney stated that he did not represent Ramos. Sentencing was adjourned to September 11. On August 29, Schulman appeared with Ramos before another Judge and stated that Ramos wished to replace him with another attorney. Speaking through an interpreter, Ramos stated that he had been denied his constitutional rights because a lawyer had been assigned to him in the lower court but he had been forced to go to trial with a lawyer whom he did not want; and that he then wanted a Legal Aid attorney to represent him. The court did not relieve Schulman, but instead directed him to remain in the case until sentencing when he could tell the Trial Judge what had occurred; and the court assigned a Legal Aid attorney to assist Schulman. On September 11 defendants were arraigned for sentencing before the Trial Judge. Ramos then stated that he wanted Schulman to represent him, whereupon the Judge relieved the Legal Aid attorney "for the purpose

of sentence" and recognized Schulman as Ramos' attorney only for the purpose of sentence. When the allocution pursuant to section 480 of the Penal Law was put to Ramos he said he wanted Schulman to speak for him. Schulman then tried to tell the Judge that he thought the judgment was invalid and should be vacated, but the Judge refused to allow him to speak about that and insisted that he speak only about mitigation of punishment. A lengthy and heated colloquy ensued in which Schulman insisted that he had a right to speak about the alleged invalidity of the conviction; and the Judge forbade him to speak about anything but mitigation of punishment. On this record, it is our opinion that defendant Ramos was denied his right to the effective assistance of counsel at the sentencing and was also denied his basic right to show "legal cause * * * why judgment should not be pronounced against him" (Code Crim. Pro., § 480; *People* v. *Miles,* 13 A D 2d 509; see, also, *People* v. *Nesce,* 201 N. Y. 111, 114).